UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,       ) | |
| ) No. 8:22-cr-00259-WFJ-AEP | |
| Plaintiff,       ) | |
| ) | |
| vs.       ) | |
| ) | |
| PENNY HESS,       ) | |
| ) | |
| Defendant.       ) | |

**MOTION FOR ORDER ON THE GOVERNMENT
TO DISCLOSE GRAND JURY TRANSCRIPTS**

NOW COMES Defendant, PENNY HESS, by and through her attorneys, pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E), and respectfully moves this Honorable Court to order disclosure by the government of transcripts from the indicting Grand Jury. In support of this motion, Defendant states as follows:

This case is currently scheduled for trial in September 2024, unless the Court grants Defendant's Motion to Dismiss Indictment based on the First Amendment.

The government has produced Rule 16(a) discovery. This discovery does not include any grand jury transcripts. The government is normally required to produce grand jury transcripts of its trial witnesses' testimony in accordance with the requirements of the Jencks Act, 18 U.S.C. § 3500(b). The government, however, has indicated that it does not intend to call as a trial witness any witness who testified before the grand jury and thus will not disclose any grand jury transcripts to the defendants.

The Rule 16 discovery tendered by the government in this case appears to be in

direct conflict with the allegations in the Superseding Indictment, thus indicating that the Grand Jury was presented with erroneous and/or misleading information to obtain the indictment. A review of the transcripts of the testimony of grand jury witnesses is therefore necessary to confirm whether false or misleading evidence was presented to the grand jury. Such evidence could provide an additional basis for the defendant to seek dismissal of the indictment. *See United States v. Brito*, 907 F.2d 392, 394 (2d Cir. 1990) (a court may dismiss an indictment "if the grand jury was misled or misinformed); *United States v. DiBernardo*, 775 F.2d 1470, 1475 (11th Cir. 1985) (the government's knowing presentation of false evidence to the grand jury in order to obtain an indictment is grounds for dismissal); *United Slates v. Bracy*, 566 F.2d 649 (9th Cir. 1977) (prosecutor may not procure an indictment with perjured testimony or false evidence); *United States v. Roth*, 777 F.2d 1200, 1205 (7th Cir. 1985). *See also* U.S. Attorney's Justice Manual, § 9-11.233 ("It is the policy of the Department of Justice ... that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person.")

    Defense counsel has communicated these concerns to government counsel and provided a draft of this motion for the government to review. Counsel for the government has declined to disclose any grand jury transcripts. Accordingly, we are unable to resolve our differences and request assistance from the Court.

2

Further, this motion concerns matters which are not covered by this Court's Pretrial Discovery Order. The Jencks Act, 18 U.S.C. § 3500(b), requires the government to produce statements of its witnesses prior to trial, including grand jury transcripts. However, the government has indicated that it will not call any grand jury witness at trial and therefore will not disclose any grand jury transcripts to the defendant.

This motion is filed on behalf of defendant Penny Hess. The arguments set forth in this motion apply equally to the other two African People's Socialist Party ("APSP") defendants, Omali Yeshitela and Jesse Nevel.

## ARGUMENT

Rule 6 of the Federal Rules of Criminal Procedure provides in pertinent part:

> The court may authorize disclosure--at a time, in a manner, and subject to any other conditions that it directs--of a grand-jury matter:
>
> (i) preliminarily to or in connection with a judicial proceeding;
>
> (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury.

Fed. R. Crim. P. 6(e)(3)(E). *See also United States v. Burke*, 856 F.2d 1492, 1496 (11th Cir. 1988) ("A defendant's effort to obtain grand jury materials can only succeed with a showing of particularized need.")

**A.   The Allegations in the Superseding Indictment are in Direct Conflict with the Government's Evidence, thus Indicating that the Grand Jury was Misled.**

In the case at bar, there is evidence that false and/or misleading evidence was presented to the indicting grand jury, and that absent such evidence, the grand jury

3

would have had insufficient evidence to indict the defendant. However, the most telling evidence – the Grand Jury transcripts – has not yet been disclosed to the defense.

The Superseding Indictment charges defendant Hess with acting as an unregistered foreign agent in violation of 18 U.S.C. § 951. To be an "agent of a foreign government" under Section 951, a person must "agree[] to operate . . . subject to [foreign] direction or control." *United States v. Rafiekian*, 991 F.3d 529, 540-41 (4th Cir. 2021) (citing 18 U.S.C. § 951(d)). The indictment alleges that defendant Ionov and his organization, the Anti-Globalization Movement of Russia ("AGMR"), "did exercise direction or control over ... the APSP ... in support of protests, political campaigns, and other actions within the United States." Dkt. No. 12, ¶ 26e.

The Indictment identifies specific examples or overt acts in which Hess and the APSP are alleged to be under the control of Ionov's organization. None of these allegations are supported by the evidence that has been disclosed to the defense. Quite to the contrary, the evidence shows that during the entirety of defendant Hess's relationship with Ionov and/or the AGMR, she worked to advance the interests of the APSP, as she has done for more than forty years. We have seen no evidence that Hess or the APSP were under direction or control of a foreign government and it is unclear what evidence was shown to the grand jury to induce it to issue the indictment.

First, the indictment makes the inflammatory accusation that Hess and the APSP knowingly allowed Russian intelligence to use the APSP to "sew division inside the U.S." Dkt. No. 12, Overt Act 18. This allegation appears to be based on the selective use

4

of quotes from an internal memorandum prepared by a member of the APSP, summarizing defendant Yeshitela's trip to Moscow in September 2015. The allegation is highly misleading. The relevant paragraph from which the quotes were selected for the indictment makes it clear that the APSP was pursuing its own agenda, not Russia's:

> In attending the AGM conference, we did so recognizing that the Anti-Globalization Movement of Russia (which more than likely represents a method by which the Russian Government is engaging the U.S. and Europe in serious struggle) is carrying out it's own agenda-to utilize forces inside of the U.S. to sew division inside the U.S. Likewise, our Party is clear that we also have our agenda–to place the question of African self-determination on the world's agenda and to win international allies for our National Liberation Struggle. The success of our first trip, facilitated our ability to embark on our 2nd trip to Russia on September 20, The Worldwide Conference for Self-sufficiency of oppressed people's. Our participation in the Worldwide Conference was qualitatively different as it afforded our Party the ability to speak on a forum of several groups some of who were waging struggles for the rights to control our own destinies among them, the Irish Republican Socialist Party, IRSP a group the Chairman visited in Belfast, Ireland in 1983 and the Catalan Solidarity for Independence Movement, fighting for succession from Spain, and who recently won the election in Spain.

Disc., E-mail from Gaida Kambon (Sept. 30, 2015, 20:51 EST), Ex. A, at 1-2.

Second, the indictment alleges that Hess and the APSP were directed by Russia in January 2016 to organize a four-city speaking tour to promote the issue of reparations for crimes committed against African peoples. Dkt. No. 12, Overt Acts 19-26. The evidence contradicts this allegation. Internal APSP memoranda, obtained by the government, reveal that the APSP saw its alliance with the AGMR and with the anti-colonial movements of other nations, as "invaluable" in supporting APSP's mission of pushing back against the "imperialist narrative" and the "more vicious aspects of

colonial domination." Disc., Organize to Win! Organize to Govern!: Political Report to the 2016 Plenary of the African People's Socialist Party, Ex. B, at 59. "For the first time since the Black Revolution of the Sixties, the struggle of the African working class and poor peasantry was represented on the world stage by the African People's Socialist Party at an international conference on self-determination in Moscow attended by a wide range of peoples organizing to win independence." *Id.* at 18.

Internal APSP documents further reveal that the motivation for the January 2016 four-city speaking tour was to advance the mission of the APSP and not to support Russia or any foreign government. The APSP tour followed a United Nations fact-finding tour led by Mirielle Fanon during which the United Nations "gather[ed] first-hand information about the current human rights situation of African-Americans."[1] APSP members testified at hearings in four of the cities in the fact-finding tour. Ultimately, the United Nations working group concluded that the United States owes reparations for slavery and mass incarceration.[2]

The 2016 speaking tour included a "tent vigil" where witnesses to crimes against

---

[1] *UN expert group on people of African descent launches fact-finding visit to the United States*, United Nations Human Rights Office of the High Commissioner (Jan. 15, 2016), https://www.ohchr.org/en/press-releases/2016/01/un-expert-group-people-african-descent-launches-fact-finding-visit-united; *see also Africans Charge Genocide Encampment Tour!*, The Burning Spear (Mar. 2016), https://original-ufdc.uflib.ufl.edu/AA00069330/00282/6j.

[2] Ishaan Tharoor, *U.S. owes black people reparations for a history of 'racial terrorism,' says U.N. Panel*, The Washington Post (Sept. 27, 2016), https://www.washingtonpost.com/news/worldviews/wp/2016/09/27/u-s-owes-black-people-reparations-for-a-history-of-racial-terrorism-says-u-n-panel/.

African peoples were housed and had their voices heard. The planning documents indicate that the AGMR had pledged financial support to pay for heated tents, sleeping bags and food. The AGMR further promised exposure to international media, creating "the possibility of generating real national, international attention." Disc., Recorded Internal APSP Meeting (Jan. 15, 2016) (recording available upon request).

As evidence that Hess and the APSP were under the direction or control of the Russian state, the indictment alleges that Ionov sent Hess an electronic message on February 1, 2016, "directing the APSP to draft a detailed report describing the four-city tour that AGMR had funded to raise awareness for the genocide petition." Dkt. No. 12, Overt Act 22. This allegation is highly misleading. While Facebook messages obtained by the government do show that Ionov requested information about the four-city tour, the indictment omits to mention that defendant Yeshitela sent Ionov the following messages in reply to Ionov's request, which clearly demonstrate that the APSP was not under Ionov's direction or control:

> 2016-02-01 17:52:46 UTC: Uhuru! This is Chairman Omali Yeshitela. I understand what Alex [Ionov] is asking for, but I don't know what relationship that has with the promise you made to us about getting the money to us right away, within two days of our expenditures! The fact is that the amount of money we spent was very high for our Party and we would not have borrowed the money if you had not GUARANTEED immediate replacement. You and Alex even talked about sending us a letter guaranteeing immediate repayment. Now, you seem to be placing conditions on sending the money. We sent you a full plan of action that included what we were going to do and where it would be done. You were fully aware of our plans and it is unacceptable for you to be now questioning our action. We will send the information you are requesting, but you must also expeditiously send the money you promised. I can speak

> further to this in our meeting tomorrow. However, it must be understood that we entered this relationship with the Anti Globalization Movement of Russia as ALLIES, not employees! P. 319-320
>
> 2016-02-01 17:55:49 UTC: Uhuru: This is Chairman Omali Yeshitela again. One of the reason you we (sic) sent the plan of action to you detailing our movement is your promise to provide international media. Please send the report on what media you provided for our action. This would be helpful to us. P. 320

Disc., Penny Hess Facebook Chat (Feb. 1, 2016, 17:52:46, 17:55:49 UTC), Ex. C.

Third, the indictment alleges that Hess and the APSP defendants spread "Russian propaganda and disinformation" at Ionov's behest, by making political speeches and publishing articles opposing U.S. support for the war in Ukraine. Dkt. No. 12, ¶26(c), Overt Acts 66-75. However, the government has now conceded that the APSP's political speeches against the war were not "necessarily false"[3]; thus the defendants did not spread "disinformation."[4] It is further undisputed that the APSP defendants' public opposition to U.S. interference in Ukraine predated the Chairman's visit to Moscow in 2015 by at least a year.[5] As a matter of law, the fact that the APSP defendants' position on Ukraine aligned with Russia's did not make them Russian agents. See *United States v. Rafiekian*, 991 F.3d 529, 538 (4th Cir. 2021) ("To fall within § 951's ambit, a person

---

[3] Dkt. 130, at 5, n.2.

[4] See https://www.merriam-webster.com/dictionary/disinformation (Disinformation is "false information deliberately and often covertly spread (as by the planting of rumors) in order to influence public opinion or obscure the truth.")

[5] *Ukraine, Russia, EU, U.S. and the crisis of imperialism*, The Burning Spear, Apr. 20, 2014, https://theburningspear.com/1279/.

must do more than act in parallel with a foreign government's interests or pursue a mutual goal.")

Fourth, the indictment alleges that "Ionov and AGMR would and did exercise direction or control - and provide financial support, consulting, instruction, and promotion in Russian media outlets to - the APSP . . . in support of . . . political campaigns." Dkt. No. 12, ¶ 26(e). In particular, the indictment states that Ionov reported to his Russian compatriot that he provided financial assistance and supervision to the campaigns of candidates affiliated with the APSP for local political office in St. Petersburg, Florida. Dkt. No. 12, Overt Acts 31, 44-48. The indictment alleges that Ionov communicated with superiors, representing that he was "consulting every week" and that he had donated to APSP members' political campaigns. Dkt. No. 12, ¶ 45. However, a review of discovery documents, including bank statements, electronic communications, recorded meetings, campaign finance reports, and numerous other records, show no foreign contributions and no evidence of foreign oversight of any election campaign of any APSP member.

Fifth, the indictment alleges that defendants took steps to "conceal and obfuscate financial transactions"; to "thwart detection of their activities by law enforcement"; and to "misrepresent, hide, and conceal" their actions. Dkt. No. 12, ¶ 26(k), (l), and (m). There is zero evidence to support these allegations against any of the APSP defendants. Quite to the contrary, the APSP defendants publicly reported on their two trips to Moscow and their participation in AGMR-sponsored programs, which provided them

9

an opportunity to win international allies for their cause.

**B.      The Defendant's Showing that the Indicting Grand Jury was Likely Presented with False or Misleading Evidence – Grounds for Dismissal of the Indictment – Warrants Disclosure of Grand Jury Transcripts.**

Rule 6(e)(3)(E) of the Federal Rules of Criminal Procedure authorizes the Court to order disclosure of grand jury materials "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed R. Cr. Proc. 6(e)(3)(E). Defendant Hess has demonstrated serious inconsistencies between the government's evidence and the allegations in the indictment, suggesting that the indicting grand jury was presented with false or misleading evidence regarding whether the defendant was under the direction or control of a foreign government.

If the grand jury transcripts confirm that defendant Hess was indicted on false or misleading evidence, the indictment should be dismissed. Defendant Hess should not be required to stand trial on an indictment procured with false or misleading evidence.

Further, because the grand jury's work is complete and the case has been indicted, there is no concern about protecting secrecy. As the Supreme Court has stated:

> Grand jury testimony is ordinarily confidential. But after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it.

*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 233-234 (1940) (citation omitted).

The government has indicated that it will not disclose any grand jury transcripts to the defendants. The ends of justice require production of these transcripts, as the

inconsistencies between the allegations in the Superseding Indictment and the discovery suggest that the government misled the grand jury. For all these reasons, this Court should order disclosure of the transcripts from the indicting grand jury.

WHEREFORE, based on the foregoing, Defendant PENNY HESS respectfully requests that the Court direct the Government to provide the requested information.

Respectfully submitted,

/s/ Leonard C. Goodman
LEONARD C. GOODMAN

Leonard C. Goodman
Angela J. Reaney
Goodman Law Office
53 W. Jackson
Suite 1650
Chicago, Illinois  60604
(312) 986-1984

## CERTIFICATE OF SERVICE

    I hereby certify that on April 2, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                       /s/   Leonard C. Goodman

Leonard C. Goodman  
53 W. Jackson  
Suite 1650  
Chicago, Illinois 60604  
(312) 986-1984